**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KIRK MCFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 4440 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| FORD MOTOR COMPANY, a Delaware | ) | |
| Corporation, and ROBERT DENARDO, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Kirk McField, a former electrician for Defendant Ford Motor Company ("Ford"), alleges that his supervisor, Defendant Robert Denardo, ordered him to falsify certain welding reports. When McField refused to do so, Denardo allegedly fabricated a story that McField had assaulted him. Ford subsequently suspended and fired McField. In this lawsuit, McField contends that Ford fired him for refusing to falsify the welding reports and thereby engaged in illegal retaliation (Count I). He also accuses Ford and Denardo of defamation leading to the termination of his employment (Count II). Ford has moved to dismiss the retaliatory discharge claim (Count I) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Because McField has not identified an Illinois policy with sufficient specificity as required to state a retaliatory discharge claim, the Court grants Ford's motion and dismisses that claim without prejudice.

---

[1] Neither Ford nor Denardo has challenged the legal sufficiency of McField's defamation claim.

## BACKGROUND[2]

Ford employed McField for more than eight years as an electrician at its Chicago, Illinois assembly plant prior to his termination on November 10, 2020. About two weeks before his termination, McField's supervisor, Denardo, ordered him to falsify certain welding reports by backdating them, which would have given the incorrect impression that Denardo had reviewed them in a timely manner. "The welding reports are vital" for ensuring that Ford manufactures cars "to the appropriate safety standards." Doc. 1-1 ¶ 13. McField believes that Denardo had previously approached other electricians and asked them to falsify the reports, but they refused to comply. McField also refused to backdate the reports, and he told Denardo that he would inform human resources about the falsification order.

However, before McField could make his report, Denardo falsely told human resources that McField had head-butted him. McField believes that Denardo lied about the assault "in order to prevent McField from reporting Denardo's misconduct." *Id.* ¶ 19. After human resources informed McField of Denardo's accusation, "McField immediately reported Denardo's instruction that he falsify the welding reports." *Id.* ¶ 20. Nevertheless, Ford suspended McField owing to Denardo's accusation, and it subsequently terminated his employment.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P.12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's

---

[2] The Court takes the facts in the background section from McField's complaint and presumes them to be true for the purpose of resolving Ford's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Illinois is an "at-will" employment state, meaning that "a noncontracted employee is one who serves at the employer's will, and the employer may discharge such an employee for any reason or no reason." *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 32 (1994). A major exception to this rule, however, is the common law tort of retaliatory discharge. *Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 67 (1985). Retaliatory discharge claims hold employers liable for damages when they retaliate against workers in a manner that violates a public policy of the State of Illinois. *Id.* at 67–68. The tort exists to help ensure that Illinois effectively balances "the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." *Palmateer v. Int'l Harvester Co.*, 85 Ill. 2d 124, 129 (1981).

"To state a valid retaliatory discharge cause of action, an employee must allege that (1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy." *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 500 (2009). McField's allegations that Ford fired him in retaliation for refusing to backdate Denardo's welding reports satisfy the first and second elements, and Ford does not

argue otherwise in its motion to dismiss. Instead, Ford argues that McField has not sufficiently alleged that his termination contravened some Illinois policy.

The third element of the tort requires a plaintiff to allege both the existence and the violation of a relevant Illinois policy. *Lyssenko v. Int'l Titanium Powder, LLC*, No. 07 C 6678, 2008 WL 4671768, at *2 (N.D. Ill. Oct. 20, 2008). Whether the policy exists is a question of law. *Turner*, 233 Ill. 2d at 501–02. The Illinois Supreme Court has acknowledged that "no precise definition" of "clearly mandated public policy" exists. *Palmateer*, 85 Ill. 2d at 130. In general, however, a "public policy concerns what is right and just and what affects the citizens of the State collectively" and "must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Id.* The source of the required policy "is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Id.* Further, the alleged violation must implicate "a *specific* expression of public policy." *Turner*, 233 Ill. 2d at 503 (emphasis added) (internal quotation marks omitted). Examples of insufficiently specific allegations of public policy include: the "right to marry" a coworker; "product safety"; "promoting quality health care"; and "the Hippocratic Oath." *Id.* (citations omitted). As the *Turner* court emphasized, "[a] broad, general statement of policy is inadequate . . . . An employer should not be exposed to liability where a public policy standard is too general to provide any specific guidance or is so vague that it is subject to different interpretations." *Id.* at 502–03 (citations omitted) (internal quotation marks omitted).

In his complaint, McField asserts that his discharge "violated a clear mandate of public policy in that the welding reports ensure" adherence to automobile manufacturing standards. Doc. 1-1 ¶ 26. Falsifying welding reports could "potentially allow[] for automobiles not manufactured properly to be sold," which in turn could "adversely affect[] the health and safety

of drivers of those automobiles and others on the road." *Id.* Ford argues that this statement cannot support McField's claim because it amounts to a "mere invocation of 'safety' and 'health'" like those that courts have previously rejected. Doc. 11 at 4; *accord Turner*, 233 Ill. 2d at 508 ("the general concept of 'patient safety,' by itself," cannot constitute a "clearly mandated public policy"); *Shaffer v. Nat'l R.R. Passenger Corp.*, No. 11 C 970, 2011 WL 4916493, at *3–4, *4 n.* (N.D. Ill. Oct. 17, 2011) (grounding a retaliatory discharge claim in promotion of health and safety in the preamble to the Illinois Constitution "does not survive *Turner*"); *U.S. ex rel. Chandler v. Hektoen Inst. for Med. Rsch.*, 35 F. Supp. 2d 1078, 1082 (N.D. Ill. 1999) ("Efforts to promote health and safety, standing alone, are not enough to make out a claim for retaliatory discharge.").

Although a plaintiff claiming retaliatory discharge need not cite a specific statute, *Stebbings v. Univ. of Chicago*, 312 Ill. App. 3d 360, 366 (2000), Ford contends that McField's complaint does not identify *any* source of law (statutory, constitutional, judicial, or otherwise) creating the required public policy. In response, McField cites the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 30101; several Illinois statutes concerning road safety; provisions in the preamble to the Illinois Constitution affirming the State's commitment to its citizens' safety; and certain quotations from Illinois caselaw making similar assertions. Doc. 25 at 5–7. However, McField's cited constitutional provisions and caselaw quotations do not suggest the existence of a specific public policy beyond the threshold established in *Turner*. *Schaffer*, 2011 WL 4916493, at *4 n.*. And, as Ford correctly points out, McField's cited statutes all concern prohibitions on actions *by a driver*—e.g., speeding, 625 Ill. Comp. Stat. 5/11-601, or drunk driving, 625 Ill. Comp. Stat. 5/11-501. Ford argues that these statutes "are, on their face, not even remotely related to welding procedures inside an automobile assembly plant,

or to the assembly of cars in general." Doc. 26 at 4. The Court agrees; these statutes do not implicate the existence of a public policy related to the proper *manufacturing* of cars and so do not provide the required public policy for McField's retaliatory discharge claim. *See Shaffer*, 2011 WL 4916493, at *4 (public policy inquiry "focuses attention on the conduct that prompted the employee's whistleblowing, and asks whether a specific statute, regulation, or judicial decision prohibits that conduct").

That said, an allegation of a practice of falsifying welding reports related to the safety of automobiles could amount to a matter that "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer*, 85 Ill. 2d at 130. The Court finds implausible the proposition that Illinois has no policy requiring that vehicles be mechanically safe. Indeed, certain statutes seem to indicate that such a policy exists. *See, e.g.*, 625 Ill. Comp. Stat. 5/12-101 ("It is unlawful for any person to drive . . . any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property[.]"). Other sources of law may indicate even more clearly that manufacturing cars unsafely violates Illinois public policy. But because McField has not sufficiently identified a clearly mandated public policy that Ford violated, the Court grants Ford's motion to dismiss the claim. McField may file an amended complaint if he can identify with greater specificity the existence and source of the public policy that Ford has allegedly violated.[3]

---

[3] Because the Court finds that McField has not identified a public policy with sufficient specificity, it does not reach the question of whether McField has sufficiently alleged a violation of that policy.

**CONCLUSION**

For the foregoing reasons, the Court grants Ford's motion [10] and dismisses McField's retaliatory discharge claim (Count I) without prejudice. The Court grants McField until February 11, 2022 to file an amended complaint consistent with this Opinion.

Dated: January 10, 2022

_____
SARA L. ELLIS
United States District Judge